# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHAEL LANGUEIN,

Plaintiff,

v.

AHLIN, et. al.,

Defendants.

_______________________________________/

1:09-cv-00199-SMS (PC)

ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND

(Doc. 1)

**I. SCREENING ORDER**

Michael Languein ("Plaintiff") is a Sexually Violent Predator (SVP) civil detainee proceeding pro se and in forma pauperis. Plaintiff and six others filed the Complaint in this action on July 23, 2008. (Doc. 1.) On January 29, 2009, this Court ordered the claims severed, with Plaintiff proceeding on his claims in this action and all other named plaintiffs proceeding in separate actions. (Doc. 23.) Thus, Plaintiff's claims are before the Court for screening at this time.

**A. Screening Requirement**

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which

relief may be granted if it appears beyond doubt that Plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

**B. Summary of Plaintiff's Complaint**

Plaintiff is a SVP at Coalinga State Hospital (CSH) in Coalinga, California – where the acts he complains of occurred.

Plaintiff names defendants: Pam Ahlin, Acting Executive Director of CSH; Cynthia A. Radavsky, Deputy Director of Long Term Services (CDMH); Mr. Montoyo, Acting Director of DCPS; Gary Renzaglia, Clinical Administrator of CSH; and Linda Clark, Assistant Chief of SCH. It appears that Plaintiff only seeks injunctive relief via imposition of a number of policy changes at CSH.

Plaintiff complains that a number of policies and/or procedures at CSH infringe upon his ability to exercise his religion. The manner in which the Complaint is organized makes it difficult at best to ascertain specific factual basis for Plaintiff's generalized policy claims. On the first page of the Complaint, Plaintiff states that the named defendants violated, and denied him of, his Federal Constitutional rights to substantive due process, equal protection, and under the First, Fourth, and Fourteenth Amendments of the United States Constitution, and the State of California Constitution.[1] Thereafter, Plaintiff states broad and general allegations relating to a number of policies and/or procedures that, as best as the Court is able to decipher, relate to his ability to freely exercise his religion – the Inyana Native American Spiritual Circle (INASC). Plaintiff fails to delineate which factual allegations he feels show violation(s) of any specific constitutional right(s). Screening Plaintiff's Complaint is further complicated by the disorganized and somewhat repetitive manner in which it is formatted. To wit, on the second page, Plaintiff lists some thirteen (though misnumbered) areas where he feels policies and

---

[1] The discussion of Plaintiff's federal constitutional claims resolves both the federal and state constitutional claims. Los Angeles County Bar Assoc. v. Eu, 979 F.2d 697, 705 (9th Cir. 1992) (citing Payne v. Superior Court, 132 Cal.Rptr. 405, 410 n. 3 (1976) (the California Constitution provides the same basic guarantee as the Fourteenth Amendment of the United States Constitution)).

procedures infringed on his rights; Plaintiff's statement of facts delineates twelve (though also misnumbered) such infringements; but, he delineates seventeen issues on which he requests injunctive relief. The Court provides Plaintiff with the following law that appears to apply to his claims. However, the Court is simply unable to ascertain any factual basis for a number of the issues upon which Plaintiff requests injunctive relief. It is Plaintiff's duty to correlate his claims for relief with their alleged factual basis. Plaintiff's complaint is also peppered with legal citations and quotes which are superfluous and only serve to obscure his factual allegations. It appears that Plaintiff has cut and pasted whole excerpts from published rulings in other cases into his Complaint which causes it to appear that he is pursuing instances and factual scenarios that have previously been litigated by other parties. If he chooses to file a first amended complaint, Plaintiff should avoid stating any legal citations, quotations, and/or argument. Plaintiff may be able to amend to correct deficiencies in his pleading so as to state cognizable claims. Thus, he is being given what appear to be the applicable standards and leave to file a first amended complaint.

### C. Pleading Requirements

#### 1. Linkage

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each named

defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights. Plaintiff fails to link any of the named defendants to any act or omission to demonstrate a violation of his federal rights. Further, Plaintiff mentions Rick Daley, Chief of CPS in his factual allegations, but fails to list him as a defendant in the caption, or anywhere else in his complaint. If Plaintiff intends to pursue claims against Chief Daley, he must appropriately identify him as a defendant in this action.

Further, all of the defendants named in this action are supervisors. Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff has not alleged any facts indicating that any of the defendants personally participated in the alleged deprivation of constitutional rights; knew of any violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black at 646. Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

**2. Exhibits**

Plaintiff's complaint is ninety-three pages long. Only eleven pages of the complaint contain Plaintiff's factual allegations -- all other pages are exhibits. Plaintiff is advised that the

Court is not a repository for the parties' evidence. Originals, or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) need not be submitted until the course of litigation brings the evidence into question (for example, on a motion for summary judgment, at trial, or when requested by the Court). At this point, the submission of evidence is premature as Plaintiff is only required to state a prima facie claim for relief. Thus, in amending his complaint, Plaintiff would do well to simply state the facts upon which he alleges a defendant has violated his constitutional rights and refrain from submitting exhibits.

Plaintiff's allegations generally refer the Court to his exhibits. If Plaintiff chooses to file and attaches exhibits to his amended complaint, each exhibit must be specifically referenced. Fed. R. Civ. Pro. 10(c). For example, Plaintiff must state "see Exhibit A" or something similar in order to direct the Court to the specific exhibit Plaintiff is referencing. Further, if the exhibit consists of more than one page, Plaintiff must reference the specific page of the exhibit (i.e. "See Exhibit A, page 3"). Finally, the Court reminds Plaintiff that the Court must assume that Plaintiff's factual allegations are true. Therefore, it is generally unnecessary for a plaintiff to submit exhibits in support of the allegations in a complaint.

### C. Plaintiff's Claims for Relief

#### 1. First Amendment – Free Exercise of Religion

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const., amend. I. Prisoners "retain protections afforded by the First Amendment," including the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987). SVP detainees must, at a minimum, be afforded the rights afforded prisoners confined in a penal institution. Hydrick v. Hunter 500 F.3d 978, 998 (9th Cir. 2007). Thus, SVP's also retain protections afforded by the First Amendment. The protections of the Free Exercise Clause are triggered when prison officials burden the practice of a detainee's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part* by Shakur, 514 F.3d at 884-85.

However, "'[l]awful [detainment] brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" O'Lone, 482 U.S. at 348 (quoting Price v. Johnson, 334 U.S. 266, 285 (1948)). "To ensure that courts afford appropriate deference to prison officials, . . . prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone, 382 U.S. at 349. Under this standard, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). First, "there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it," and "the governmental objective must itself be a legitimate and neutral one." Id. A second consideration is "whether there are alternative means of exercising the right that remain open to [detainees]." Id. at 90 (internal quotations and citation omitted). A third consideration is "the impact accommodation of the asserted right will have on guards and other inmates, and on the allocation of prison resources generally." Id. "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id.

While Plaintiff complains of prohibitions of his religious activities and possessions, nowhere does he state any allegations to show that the restrictions he complains of infringe on beliefs that he sincerely held. Plaintiff's only allegations as to his religious beliefs are that he is a member of the INASC. However, being a member does not necessarily infer the sincerity of one's religious beliefs. Plaintiff also fails to state any allegations to address both the governmental objective motivating the regulations that offend him, and the availability of alternative means of exercising his religious beliefs. Thus, Plaintiff fails to state a cognizable claim under the First Amendment for infringement on the free exercise of his religious beliefs.

**2. Fourth Amendment**

The Ninth Circuit has held that "the Fourth Amendment right to be secure against unreasonable searches and seizures 'extends to incarcerated prisoners.' " Thompson v. Souza, 111 F.3d 694, 699 (9th Cir.1997) quoting Michenfelder v. Sumner, 860 F.2d 328, 332 (9th

Cir.1988)). Thus, this protection certainly extends to SVPs. Hydrick v. Hunter 500 F.3d 978, 993 (9th Cir. 2007).

"The reasonableness of a particular search [or seizure] is determined by reference to the [detention] context." Michenfelder, 860 F.2d at 332. There are concerns that mirror those that arise in the prison context: e.g., "the safety and security of guards and others in the facility, order within the facility and the efficiency of the facility's operations." Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir.2001). The "reasonableness" of a search or seizures is a fact-intensive inquiry that cannot be determined without submission of evidence. Hydrick v. Hunter 500 F.3d 978, 993 (9th Cir. 2007) referring to Thompson, 111 F.3d 694 (9th Cir.1997).

If Plaintiff had appropriately linked his allegations to any of the defendants, his claims the weekly searches of his living area for "personal Spiritual Items" would have been cognizable under the Fourth Amendment. (Doc. 1, pg. 6.) The Court will not be able to address the "reasonableness" of any such searches and seizures until a cognizable claim is stated and evidence is submitted.

Plaintiff's allegations that he is searched four times a month and that "hospital wide searches" are conducted are too vague to be cognizable at this time. Id. Further, Plaintiff fails to show how his allegations regarding his being searched four times a month and the hospital wide searches are related to the other claims he makes in the Complaint so as not to violate Fed.R.Civ.P. 18(a).

Plaintiff is advised that if he chooses to file an amended complaint, and fails to comply with Rule 18(a), the Court will count all frivolous/noncognizable unrelated claims that are dismissed therein as strikes such that he may be barred from filing in forma pauperis in the future.

**3. Fourteenth Amendment**

**a. Equal Protection**

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). Plaintiff is entitled "to 'a reasonable

opportunity of pursuing his faith comparable to the opportunity afforded fellow [detainees] who adhere to conventional religious precepts.'" Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008) (quoting Cruz v. Beto, 405 U.S. 319, 321-22 (1972) (per curiam)). To state a claim, a plaintiff must allege facts sufficient to support the claim that officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. Cruz, 405 U.S. at 321-22; Shakur, 514 F.3d at 891; Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part on other grounds* by Shakur, 514 F.3d at 884-85.

Plaintiff fails to state any allegations to show whether he was provided comparable opportunity of pursuing his faith as was afforded to detainees of conventional religions. Plaintiff also fails to state any allegations to show that any restriction on his pursuit of his faith occurred as a result of intentional discrimination by any of the named defendants. Thus, Plaintiff fails to state a cognizable claim under the Equal Protection Clause.

**b. Substantive Due Process**

The Due Process Clause protects prisoners, and detainees, from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners and detainees have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," Hudson v. Palmer, 468 U.S. 517, 533 (1984).

An authorized, intentional deprivation of property is actionable under the Due Process Clause. See Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). An

authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Logan v. Zimmerman Brush Co., 455 U.S. at 436; Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987). Authorized deprivations of property are permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest. Turner v. Safley, 482 U.S. 78, 89 (1987).

"An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987).

Plaintiff alleges that his living area was searched for personal Spiritual Items each week and that he was denied various spiritual items. However, Plaintiff does not allege facts sufficient for the Court to ascertain any specific items that were actually removed from his possession. Thus, the Court is unable to ascertain what, if any of Plaintiff's personal property, was taken from him, and what, if any due process he received relative to any specific item(s). Further, Plaintiff has not alleged sufficient facts for the Court to determine whether any such deprivation was authorized, or unauthorized. However, the implication from Plaintiff's allegations is that the taking was authorized – i.e. carried out pursuant to established state procedures, regulations, or statutes. If it was authorized, as long as Plaintiff was provided with process, Plaintiff may be deprived of his property. For all of these reasons, Plaintiff's claim that he was denied due process is not cognizable at this time.

**4. Religious Land Use and Institutionalized Persons Act of 2000**

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

No government shall impose a substantial burden on the religious exercise of a

> person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1. Plaintiff bears the initial burden of demonstrating that defendants substantially burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id. "RLUIPA disallows policies that impose 'a substantial burden on . . . religious exercise' unless the burden 'furthers "a compelling governmental interest," and does so by "the least restrictive means." ' " Alvarez v. Hill 518 F.3d 1152 (9th Cir. 2008) quoting Id. at 994 quoting 42 U.S.C. § 2000cc-1(a).

Plaintiff alleges that the exercise of his religious beliefs were burdened by: (1) Administrative Directive 642 (governing Native American Spiritual Items – personal property) not being processed within the guide-lines of the Administrative Procedure Act; (2) not being allowed to have input in religious policy making for INASC; (3) not being allowed "full time" with the Native American Chaplain (who has been taking care of other religious groups for the last two years); (4) being restricted from accessing the Sweat Lodge Spiritual Grounds to only once a month; (5) having his living area searched weekly for personal "Spiritual Items;" (6) conducting hospital-wide searches four times a month; (7) being denied the ability to share living areas or to move to a Unit with other members, or Elder, for teaching or working with other members of the INASC; (8) being denyed possession of "materials that are used in prayer and/or to make Native American items for personal use in ceremony, for prayer, and for gifts to thank a person" including Indian Ceremony Dancing Regalia including beading, beading thread, sinew and leather lace, beading needs, beading looms, Deer and Elk leather straps, and plastic carrying cases; (9) being prohibited from ordering Native American materials from outside vendors of their choice; (10) having family members and friends prohibited from participating in spiritual events; (11) being forced to use overcrowded general populated courtyards for the practice of his religion; and (12) being denied full practice of his religion, personal property for teaching, and of making items used for prayer such as a beading loom.

Plaintiff fails to state his allegations with sufficient explanation and/or detail to show either a constitutional right to, or any substantial burden on his exercise of his religion by any of the above other than his being denied possession of "materials that are used in prayer and/or to make Native American items for personal use in ceremony, for prayer . . ." such as Indian Ceremony Dancing Regalia including beading, beading thread, sinew and leather lace, beading needs, beading looms, Deer and Elk leather straps, and plastic carrying cases; having access to the Sweat Lodge Spiritual Grounds limited to only once a month; and being forced to use overcrowded general populated courtyards for the practice of his religion. If Plaintiff had appropriately linked any of the defendants to his claims, these are the only three factual allegations that would state cognizable claims under RLUIPA.

**5. Injunctive Relief**

Plaintiff requests injunctive relief: (1) "that policies, practices, and customs be established to accommodate Civil Detainees;" (2) that he have "input with Administration in religious policy making for INASC with good effect;" (3) that he "have daily access to the Sweat Lodge area, no less than 5 hours per day;" (4) that he have a full time Native American Chaplain; (5) that if friends and family meet security standards, they be allowed to visit and participate in spiritual events with Plaintiff; (6) that he be allowed to retain his "personal property of Native American Spiritual Items of virtue;" (7) that he be "able to order from any vender that sells Native American items that is not a security risk;" (8) that he "have fair access to living with other members within the classification program;" (9) that he "have good access to an effective appeal system process;" (10) that he be "able to move to a Unit with other member [sic] of the INASC;" (11) that "funding be provided for all Spiritual events;" (12) that he be "able to make Native American items through an individual party or a group;" (13) that he "be free from excessive searches of living area and of Indian personal property;" (14) that searches of his "living area stop and, in case of an emergency, the Native American Chaplain will search all items that a [sic] individual has in their possession and living area;" (15) that he retain in his "possession such items and materials such as hanks of beads, beading thread, crow beads, 5mm pony beads, 20-14" Feathers, Dancing Bustles, Fan Feather, Furs, Shells, Leather, Flutes, small

handheld Drums, Spiritual Pipes, Leather Bags, Bone Hair pipe, etc.;" (16) that he be provided "treatment and care programs pursuant to Welf. & Inst. Code §§ 6600, et seq.;" and (17) that he be provided "access to County Patients Rights Advisors." (Doc. 1, pg. 9.)

The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. University of Texas v. Camenisch, 451 U.S. 390, 395 (1981). A preliminary injunction is available to a plaintiff who "demonstrates either (1) a combination of probable success and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardship tips in its favor." Arcamuzi v. Continental Air Lines, Inc., 819 F. 2d 935, 937 (9th Cir. 1987). Under either approach the plaintiff "must demonstrate a significant threat of irreparable injury." Id. Also, an injunction should not issue if the plaintiff "shows no chance of success on the merits." Id. At a bare minimum, the plaintiff "must demonstrate a fair chance of success of the merits, or questions serious enough to require litigation." Id.

Plaintiff is not entitled to a preliminary injunction as he has no constitutional right to, and thus no probability of success as to a number of the items for which he seeks injunctive relief. Plaintiff's allegations also do not demonstrate a significant threat of irreparable injury so as to necessitate the imposition of a preliminary injunction at this time.

Further, 18 U.S.C. § 3626(a)(1)(A) provides in relevant part, "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." The Court finds that the injunctive relief requested by Plaintiff is not narrowly drawn. Rather the injunctive relief sought by Plaintiff extends much further than necessary to correct the few violations that he might be able to pursue in this action, and does not appear to request the least intrusive means necessary to correct his allegations.

Finally, a federal court has limited jurisdiction. As a threshold and preliminary matter the court must have before it for consideration a "case" or "controversy." Flast v. Cohen, 392 U.S. 83, 88 (1968). If the court does not have a "case" or "controversy" before it, it has no power to hear the matter in question. Rivera v. Freeman, 469 F. 2d 1159, 1162-63 (9th Cir. 1972). "A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." Zepeda v. United States Immigration Service, 753 F.2d 719, 727 (9th Cir. 1985) (emphasis added). Since Plaintiff has not appropriately linked any of the named defendants to his claims, there is no case or controversy before the Court. The Court therefore has no jurisdiction to issue the order sought.

## II. CONCLUSION

For the reasons set forth above, Plaintiff's Complaint is dismissed, with leave to file a first amended complaint within thirty days. If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

Plaintiff must demonstrate in his complaint how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's first amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Hydrick v. Hunter, 500 F.3d 978, 987-88 (9th Cir. 2007). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted).

Plaintiff is further advised that an amended complaint supercedes the original complaint,

Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff must file an amended complaint curing the deficiencies identified by the court in this order; and
4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a cognizable claim.

IT IS SO ORDERED.

**Dated: April 8, 2009** **/s/ Sandra M. Snyder**
UNITED STATES MAGISTRATE JUDGE